39 F.3d 1078
 63 USLW 2301, 18 Employee Benefits Cas. 2313,
Pens. Plan Guide P 23904X
 Curtis GUIDRY, Plaintiff-Appellee and Cross-Appellant,
v.
SHEET METAL WORKERS NATIONAL PENSION FUND, Sheet Metal
Workers' Local Unions and Councils Pension Plan,
Defendants-Appellees,
Sheet Metal Workers International Association, Local No. 9,
Defendant-Intervenor-Appellant and, Cross-Appellee,
Sheet Metal Workers' Local No. 9 Pension Fund, Party Under
Rule 19, F.R.C.P., Defendant-Intervenor and Appellee,
Edward J. Carlough; Robert T. Stringer; C.T. Roff; Cavet
Snyder; Cecil D. Clay; George J. Cuddihy; Urie
E. Williams, Jr.; and Richard J. Scott,
Trustees, Defendants.
Josephine Upah, Amicus Curiae.
 Nos. 92-1018, 92-1034.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 1, 1994.
 
 Eldon E. Silverman of Elrod, Katz, Preeo, Look, Moison & Silverman, P.C., Denver, CO, for plaintiff-appellee and cross-appellant.
 Joseph M. Goldhammer (Ellen M. Kelman with him on the briefs) of Brauer, Buescher, Valentine, Goldhammer & Kelman, P.C., Denver, CO, for Local No. 9.
 Amicus Curiae Josephine Upah submitted on brief by Daniel J. Wintz and William Jay Riley, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., Omaha, NE.
 Before SEYMOUR, Chief Judge, LOGAN, MOORE, ANDERSON, TACHA, BALDOCK, BRORBY, EBEL, KELLY, HENRY, Circuit Judges.
 
 ON REHEARING EN BANC
 
 1
 Upon rehearing this case en banc, we return to the issue of whether the anti-alienation provision of the Employee Retirement Income Security Act of 1974 (ERISA) Sec. 206(d)(1), 29 U.S.C. Sec. 1056(d)(1), prohibits the garnishment of pension benefits after the benefits have been paid to and received by the beneficiary. The district court held that the ERISA provision applies and protects the funds from garnishment so long as they are clearly identified, are not commingled, and have not been used to acquire other assets. The panel opinion reversed, concluding that the ERISA anti-alienation provision does not apply. The panel further held that an exemption from garnishment provided by Colorado law is preempted by ERISA. On rehearing en banc, we agree with the panel that ERISA's anti-alienation provision is not applicable here. However, we conclude that state law is not preempted, and that the funds fall within the coverage of Colorado's exemption from garnishment. We modify the panel opinion accordingly and remand for further proceedings in light of this opinion.
 
 
 2
 Circuit Judge BRORBY delivered the unanimous opinion of the court with respect to Part I below.
 
 
 3
 Chief Judge SEYMOUR delivered the opinion of the court with respect to Part II, in which Circuit Judges LOGAN, MOORE, BALDOCK, EBEL, KELLY, and HENRY joined.
 
 
 4
 Circuit Judge BRORBY dissented with respect to Parts II-A and II-B, joined by Circuit Judges STEPHEN H. ANDERSON and TACHA.
 
 
 5
 BRORBY, Circuit Judge, for a unanimous court.
 
 BACKGROUND
 
 6
 Essentially, Mr. Guidry is a judgment debtor of the union intervenor, Local No. 9, in the amount of $275,000 plus interest.[1] The district court ordered union pension plans to pay Mr. Guidry's back and future pension benefits after Local No. 9's unsuccessful attempt to impose a constructive trust on pension benefits held by the funds. Local No. 9 then sought to collect its judgment through garnishment of a bank account established in Denver, Colorado, and through attempted seizure of funds tendered to Mr. Guidry at his home in Texas. Mr. Guidry challenged these efforts in United States District Courts in Colorado and in the Southern District of Texas.
 
 
 7
 Subsequently, the parties entered into a series of stipulations directing the deposit of past pension payments and future payments into a single bank account in Denver, Colorado. The parties also agreed to remove amounts from the Registry of the United States District Court for the Southern District of Texas and place the funds into the Denver account. All disputed funds, therefore, would be subject to a single writ of a garnishment so as to specifically present the issue before us. The United States District Court for the District of Colorado concluded the anti-alienation provision of ERISA continues to protect pension benefits from garnishment "so long as the proceeds are clearly identified as such and have not been co-mingled with other funds or used for the acquisition of assets." Findings, Conclusions and Order On Post Judgment Issues, No. 84-M-879 (D.Colo. Jan. 8, 1992), slip op. at 3 p 1. The district court held this conclusion was mandated by the law of the case established by the United States Supreme Court in Guidry v. Sheet Metal Workers Nat'l Pension Fund, 493 U.S. 365, 375-76, 110 S.Ct. 680, 686-87, 107 L.Ed.2d 782 (1990).
 
 
 8
 On appeal, our three-judge panel reversed the district court, with one judge dissenting. Guidry II, 10 F.3d 700, 717 (10th Cir.1993) (Brown, J., dissenting). The panel first held the mandate of the Supreme Court did not require a bar on garnishment of received pension payments. The Supreme Court was not factually presented with the issue of post-payment garnishment and therefore did not explicitly bar such garnishment as part of the law of the case. Nor would our decision to allow garnishment of distributed benefits unsettle any implicit resolution within the Court's mandate.[2]
 
 
 9
 The panel reached, then, the fundamental issue of whether the anti-alienation provision, ERISA Sec. 206(d)(1), barred post-payment garnishment. After a review of the language of the statute, its legislative history and interpretive regulations, and other benefit protection statutes, we concluded the scope of section 206(d)(1) did not extend to protect private pension benefits once paid to and received by the beneficiary. The panel also held Mr. Guidry was not entitled to protection through state law exemptions from garnishment. Mr. Guidry then petitioned for rehearing with a suggestion for rehearing en banc, under Fed.R.App.P. 35 and 40, which we granted.[3]
 
 I.
 
 10
 Having reheard the arguments of the parties and reexamined the panel's opinion, we affirm the primary holding of Guidry II. Although the plain language of the anti-alienation provision of ERISA and its legislative history are inconclusive, the applicable administrative regulations show the provision was not intended to apply to benefits following distribution to and receipt by the beneficiary. This interpretation is also consistent with comparison of other statutory provisions that expressly provide greater protection to retirement income.
 
 
 11
 ERISA is a comprehensive statute intended in significant part to ensure pension benefits will actually be received upon retirement by plan participants and beneficiaries. See Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 361, 374-75, 100 S.Ct. 1723, 1726, 1732-33, 64 L.Ed.2d 354 (1980). To that end, ERISA imposes "minimum standards" on private plan managers and employers. ERISA Sec. 101(a), 29 U.S.C. Sec. 1001(a). The anti-alienation provision of ERISA states, as a required standard for the form and payment of benefits, "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." ERISA Sec. 206(d)(1), 29 U.S.C. Sec. 1056(d)(1).[4] The provision focuses on benefits, see Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 836, 108 S.Ct. 2182, 2189, 100 L.Ed.2d 836 (1988), but is silent on whether the term is meant to include benefits in the nature of distributed funds no longer within the fund and held by the plan participant or beneficiary. We therefore look to traditional aids in constructing the statute. See Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 13, 101 S.Ct. 2615, 2622-23, 69 L.Ed.2d 435 (1981).
 
 
 12
 Legislative history of section 206(d)(1) has been described as sparse and inconclusive. See Coar v. Kazimir, 990 F.2d 1413, 1420 (3d Cir.) (citing Ellis Nat'l Bank v. Irving Trust Co., 786 F.2d 466, 470 (2d Cir.1986); GMC v. Buha, 623 F.2d 455, 460 (6th Cir.1980)), cert. denied, --- U.S. ----, 114 S.Ct. 179, 126 L.Ed.2d 138 (1993). A House Report explains the anti-alienation provision was designed "[t]o further ensure that the employee's accured [sic] benefits are actually available for retirement purposes." H.R.Rep. No. 807, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. pp. 4639, 4670, 4734.[5] This history indicates a plan is obligated to protect benefits from alienation at least up to point of payment so that benefits will be available for retirement purposes. Again, however, legislative history does not resolve whether ERISA protection extends past the mere availability of funds within the plan to include funds held by the beneficiary after distribution.
 
 
 13
 In the absence of clear Congressional intent, we give deference to reasonable agency regulations.[6] See Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Treasury regulations define "assignment" and "alienation" as "[a]ny direct or indirect arrangement (whether revocable or irrevocable) whereby a party acquires from a participant or beneficiary a right or interest enforceable against the plan in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary." 26 C.F.R. Sec. 1.401(a)-13(c)(1)(ii) (1992) (emphasis added). While the regulation does not define "benefits," it resolves our issue from another direction. The terms "alienation" and "assignment" are meant only to cover those arrangements that generate a right enforceable against a plan. Therefore, "benefits" are protected by the anti-alienation provision of section 206(d)(1) only so long as they are within the fiduciary responsibility of private plan managers. Following distribution of benefits to the plan participant or beneficiary, a creditor no longer has a right against the plan. Instead, the creditor must collect directly from the participant or beneficiary or, as here, initiate an enforceable garnishment procedure against a third-party bank who holds the funds paid to the participant or beneficiary.
 
 
 14
 This limited reading of ERISA section 206(d)(1) makes sense when compared with the more specific language found in other income protection statutes. For example, the Social Security Act, 42 U.S.C. Sec. 407(a), prohibits the attachment or garnishment of the right to future benefit payments as well as "the moneys paid or payable" to a beneficiary. See Philpott v. Essex County Welfare Bd., 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973) (social security funds on deposit retain Sec. 407 protection as "moneys paid"). The Veterans' Benefits Act, 38 U.S.C. Sec. 5301(a), makes payments of benefits "made to, or on account of, a beneficiary ... exempt from the claim of creditors, and shall not be liable to attachment ... either before or after receipt by the beneficiary." See Porter v. Aetna Casualty & Sur. Co., 370 U.S. 159, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1962) (veterans' benefits paid into savings and loan account remain readily withdrawable and therefore retain protection). Congress knew how to draft a statute protecting benefits that had left the pension plan, and it did not use similar language with ERISA section 206(d)(1).
 
 
 15
 We therefore affirm the primary holding of the Guidry II panel and conclude ERISA section 206(d)(1) protects ERISA-qualified pension benefits from garnishment only until paid to and received by plan participants or beneficiaries. Accord Trucking Employees of N. Jersey Welfare Fund, Inc. v. Colville, 16 F.3d 52 (3d Cir.1994) (agreeing with the holding of Guidry II panel opinion); NCNB Fin. Servs., Inc. v. Shumate, 829 F.Supp. 178 (W.D.Va.1993) (once the line of actual receipt is crossed, ERISA no longer protects funds originating in private pension plan, although funds originating from social security would be protected under the Social Security Act).
 
 
 16
 SEYMOUR, Circuit Judge, joined by LOGAN, MOORE, BALDOCK, EBEL, PAUL KELLY, Jr., and HENRY, Circuit Judges.
 
 II.
 
 17
 In the alternative, Mr. Guidry claims exemptions from garnishment under Colorado and Texas law.[7] See Colo.Rev.Stat. Secs. 13-54-104, 13-54-102; Tex.Prop.Code. tit. 5 Sec. 42.0021. The panel opinion held that relevant state law is either inapplicable or preempted by ERISA. See 10 F.3d at 713-14. However, the analysis which supports our determination that ERISA's anti-alienation provision does not apply here impels us to hold, contrary to the panel opinion, that ERISA's preemption provision is equally inapplicable. The conclusion that state law is not preempted is also mandated by the legal standards under which this and other courts have evaluated ERISA preemption. On the merits, applicable Colorado law clearly provides that the funds at issue here are within the ambit of that state's exemption from garnishment. We therefore hold that the funds are exempt from garnishment to the extent provided by Colorado law.
 
 A.
 
 18
 The ERISA preemption provision applies to state laws that "relate to any employee benefit plan" covered by the Act. 29 U.S.C. Sec. 1144(a) (1988). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Shaw v. Delta Airlines, Inc., 463 U.S. 85, 96-97, 103 S.Ct. 2890, 2899-2900, 77 L.Ed.2d 490 (1983). A state law may "relate to" a benefit plan "even if the law is not specifically designed to affect such plans, or the effect is only indirect." District of Columbia v. Greater Washington Bd. of Trade, --- U.S. ----, ----, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992) (quoting Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990)). Although "the words 'relate to' should be construed expansively," Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 8, 107 S.Ct. 2211, 2215-16, 96 L.Ed.2d 1 (1987), the scope of ERISA preemption is not unlimited, see Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990). State law will not be preempted when it has only "a 'tenuous, remote, or peripheral' connection with covered plans, as is the case with many laws of general applicability." Greater Washington Bd. of Trade, --- U.S. at ---- n. 1, 113 S.Ct. at 583 n. 1 (quoting Shaw v. Delta Airlines, Inc., 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983)).
 
 
 19
 ERISA preemption principles are easier to state than they are to apply. See, e.g., Monarch Cement Co. v. Lone Star Indus., Inc., 982 F.2d 1448, 1452 (10th Cir.1992) (pointing out difficulty in determining when state law preempted); National Elevator Indus., Inc. v. Calhoon, 957 F.2d 1555, 1558-59 (10th Cir.) (same), cert. denied, --- U.S. ----, 113 S.Ct. 406, 121 L.Ed.2d 331 (1992); Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp., 947 F.2d 1341, 1344 (8th Cir.) (same), cert. denied, --- U.S. ----, 112 S.Ct. 2305, 119 L.Ed.2d 227 (1992); Aetna Life Ins. Co. v. Borges, 869 F.2d 142, 145 (2d Cir.) (same), cert. denied, 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989). "[T]he 'ultimate touchstone' in determining preemption is the Congressional purpose in enacting ERISA." Hospice of Metro Denver v. Group Health Ins., 944 F.2d 752, 755 (10th Cir.1991) (quoting Fort Halifax Packing, 482 U.S. at 8, 107 S.Ct. at 2216).
 
 
 20
 The purpose of ERISA preemption is twofold. First, preemption "protect[s] the interests of employees and their beneficiaries in employee benefit plans." Second, preemption "ensure[s] that plans and plan sponsors are subject to a uniform body of benefit law ... [by] minimiz[ing] the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government."
 
 
 21
 Monarch Cement, 982 F.2d at 1453 (citations omitted).
 
 
 22
 We turn first to Mr. Guidry's claims under Colorado law. Local No. 9 filed several writs of garnishment in Colorado federal district court beginning in late April 1991. Mr. Guidry initially claimed that seventy-five percent of the funds were exempt under Colorado law, relying on Colo.Rev.Stat. Sec. 13-54-104(2)(a) (1987). Mr. Guidry further claimed, by stipulation with Local No. 9, that the funds were completely exempt under Colo.Rev.Stat. Sec. 13-54-102(1)(s) (Supp.1993), as amended in 1991.[8] Aplt.App. at 51. The statute providing a total exemption, however, applies only to writs issued by a court in any action brought on or after the effective date of its amendment, May 1, 1991. See 1991 Colo.Sess.Laws 385, Sec. 7; Colo.R.Civ.P. 103 Secs. 1 & 3, Committee Comment (Supp.1993) ("The amendment impacts the ability to garnish certain forms of income, depending upon when the original action was commenced."). Because the action underlying the writs was brought before the effective date of the amendments, we address only Mr. Guidry's claim of exemption under Colo.Rev.Stat. Sec. 13-54-104(2)(a), which exempts seventy-five percent of "disposable earnings" from garnishment. The pertinent statute defined "earnings" to include "compensation paid or payable for personal services, whether denominated as ... avails of any pension or retirement benefits, or deferred compensation plan ... or otherwise." Colo.Rev.Stat. Sec. 13-54-104(1)(b) (1987) (emphasis added) (amended 1991).
 
 
 23
 When the Colorado garnishment exemption at issue here is evaluated in light of the principles governing ERISA preemption, the Colorado statute clearly does not have a connection with or contain a reference to the covered plan under any of the analyses applied by various courts. Several circuits have recognized common categories of laws that have a connection to ERISA plans, all of which either create or regulate plan benefits, terms, reporting or other requirements, or provide remedies for misconduct arising from plan administration. See National Elevator, 957 F.2d at 1558-59 (quoting Martori Bros. Distrib. v. James-Messengale, 781 F.2d 1349 (9th Cir.), cert. denied, 479 U.S. 1018, 107 S.Ct. 670, 93 L.Ed.2d 722 (1986)); see also Arkansas Blue Cross, 947 F.2d at 1344-45; Aetna Life Ins. Co., 869 F.2d at 146-47. These state laws are preempted because they run afoul of Congressional intent that ERISA plans not be subject to conflicting state directives. Laws which regulate or affect the relationships among the primary ERISA entities are preempted for the same reason. See, e.g., Credit Managers Ass'n v. Kennesaw Life & Accident Ins., 25 F.3d 743, 751 (9th Cir.1994); Arkansas Blue Cross, 947 F.2d at 1344; Memorial Hosp. Syst. v. Northbrook Life Ins. Co., 904 F.2d 236, 248-49 (5th Cir.1990). The Colorado garnishment exemption does not affect the calculation or payment of plan benefits, nor does it otherwise impact the administration of the plan or the relationship among the plan entities. Indeed, the Colorado law has no impact on the plan whatsoever, either direct or indirect.
 
 
 24
 The state statute is therefore preempted only if it is read as making reference to an ERISA plan. "[S]tate laws which make 'reference to' ERISA plans are laws that 'relate to' those plans within the meaning of [the ERISA preemption provision]." Mackey v. Lanier Collection Agency & Serv., 486 U.S. 825, 829, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988). The relevant Colorado statute exempts from garnishment a percentage of an individual's earnings, which the statute defines as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, avails of any pension or retirement benefits, or deferred compensation plan, avails of health, accident, or disability insurance, or otherwise." Colo.Rev.Stat. Sec. 13-54-104(1)(b) (1987) (emphasis added). Although the emphasized portion quoted above does refer generally to pension benefits, it does not refer to ERISA benefits specifically nor does it refer to ERISA plans. These factors are significant.
 
 
 25
 As the Supreme Court has pointed out, "ERISA's pre-emption provision does not refer to state laws relating to 'employee benefits,' but to state laws relating to 'employee benefit plans.' " Fort Halifax Packing, 482 U.S. at 7, 107 S.Ct. at 2215; see also Ingersoll-Rand, 498 U.S. at 139, 111 S.Ct. at 483. Because the Colorado law here refers to benefits rather than plans, "the language of the ERISA presents a formidable obstacle to [preemption]." Fort Halifax Packing, 482 U.S. at 8, 107 S.Ct. at 2216; see Standard Ins. Co. v. Saklad, 119 Or.App. 91, 849 P.2d 1150, 1152 (1993), cert. denied, --- U.S. ----, 114 S.Ct. 1236, 127 L.Ed.2d 580 (1994).
 
 
 26
 The Supreme Court's analysis of the Georgia garnishment statutes at issue in Mackey compels the conclusion that the Colorado garnishment exemption is not preempted. One state statute in Mackey expressly referred to and applied solely to ERISA benefit plans. See Mackey, 486 U.S. at 829, 108 S.Ct. at 2185. The Court held that this statute was preempted because it "single[d] out ERISA employee welfare benefit plans for different treatment under state garnishment procedures." Id. at 830, 108 S.Ct. at 2186. "It is this 'singling out' that pre-empts the Georgia antigarnishment exception." Id. at 838, 108 S.Ct. at 2190 n. 12. In contrast, the general Georgia garnishment statute in Mackey did "not single out or specifically mention ERISA plans of any kind." Id. at 831, 108 S.Ct. at 2186. The Court examined whether the general statute was nonetheless preempted because it related to ERISA, and concluded that it was not. Critical to this result was the Court's conclusion that, as a matter of Congressional intent, "state-law methods for collecting money judgments must, as a general matter, remain undisturbed by ERISA." Id. at 834, 108 S.Ct. at 2187-88.
 
 
 27
 Unlike the statute held preempted in Mackey, the Colorado statute before us does not specifically mention ERISA plans or single them out for special treatment. Although the Colorado law does make a generic reference to pension benefits, the law is nonetheless one of general application and therefore of the type that has consistently been described as outside the reach of ERISA's preemption provision. See, e.g., Greater Washington Bd. of Trade, --- U.S. at ---- n. 1, 113 S.Ct. at 583 n. 1; Monarch Cement, 982 F.2d at 1452; Aetna Life Ins., 869 F.2d at 146. Such statutes may nonetheless be preempted if they have a connection to ERISA plans. See, e.g., Arkansas Blue Cross, 947 F.2d at 1344-51. For the reasons discussed above, however, the Colorado garnishment exemption has absolutely no impact on ERISA plans when examined in light of the factors relevant to such a determination. Accord Standard Ins., 849 P.2d at 1152.
 
 
 28
 Finally, a finding that ERISA does not preempt state law here is mandated by logic and common sense. If, as we hold, the anti-alienation provision of ERISA does not apply to the funds at issue because they are no longer associated with an ERISA plan, it follows that a state law affecting those funds likewise does not relate to an ERISA plan. The Colorado law providing an exemption to garnishment is therefore not preempted by ERISA. Accord id.
 
 B.
 
 29
 Turning to the application of the Colorado provisions, the discussion and decision in Rutter v. Shumway, 16 Colo. 95, 26 P. 321 (1891), drives our conclusion that these funds are exempt from garnishment. In Rutter, the Colorado Supreme Court held that the then-applicable garnishment exemption[9] continued to apply to wages after they had been deposited in the wage earner's bank account.[10] The court emphasized that the Colorado Constitution mandates the enactment of liberal exemption laws. See Colo. Const. art. XVIII, Sec. 1. In response to the argument that wages should only be exempt while they remain in the hands of the employer, the court pointed out that "[t]he statute contains no such limitation or condition." Id. at 322. In keeping with its conclusion that exemptions must be construed liberally, the Colorado court assumed that absent specific language in the statute limiting the extent of the exemption, the legislature did not intend to impose a limitation.
 
 
 30
 The rationale expressed by the court in Rutter in extending the garnishment exemption to wages deposited in a bank account is directly relevant here:
 
 
 31
 It is argued with much ingenuity that the earnings of the laborer, when received by him, are no longer wages, but capital; that the exemption statute has performed its office when it has enabled the laborer to secure his wages from his employer without let or hindrance; and that thereafter the statute cannot be invoked in his favor. The statute cannot be thus reasoned away. Such a construction is narrow and illiberal. It would compel the laborer to leave his earnings in the hands of his employer, or else forego the protection of the statute altogether. It would not only deprive him of the privilege of depositing his earnings with any bank or other depository for safe-keeping, but would subject his wages to supplemental proceedings even in his own pocket; for, if earnings once received immediately lose their character as wages, then it is evident that the laborer could never retain his earnings for a single hour without exposing them to the very perils which the statute was designed to avert. Such a construction would practically frustrate the beneficent objects of the statute.
 
 
 32
 26 P. at 322 (emphasis added). While Rutter is admittedly old, it has never been overruled by the Colorado Supreme Court and was recently followed in In re Kobernusz, 160 B.R. 844, 847-48 (D.Colo.1993). See also Miller v. Monrean, 507 P.2d 771, 774-75 (Alaska 1973) (quoting Rutter with approval). We likewise are required to follow it.
 
 
 33
 Moreover, we note that the "compensation paid" language in the Colorado statute is virtually identical to the language in the Social Security Act, 42 U.S.C. Sec. 407(a) (1988), which prohibits the garnishment of "the moneys paid or payable" to a beneficiary. The Supreme Court specifically held in Philpott v. Essex County Welfare Bd., 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973), that this language in the Social Security Act exempts funds after they have been deposited into the recipient's bank account. The Court said:
 
 
 34
 The protection afforded by Sec. 407 is to "moneys paid" and we think the analogy to veterans' benefits exemptions which we reviewed in Porter v. Aetna Casualty and Surety Co., 370 U.S. 159 [82 S.Ct. 1231, 8 L.Ed.2d 407 (1962) ], is relevant here. We held in that case that veterans' benefits deposited in a savings and loan association on behalf of a veteran retained the "quality of moneys" and had not become a permanent investment. Id., at 161-162 [82 S.Ct. at 1232-33].
 
 
 35
 Id. 409 U.S. at 416, 93 S.Ct. at 592 (citations omitted). We hold that pension benefits which constitute "compensation paid" under the Colorado statute retain their exempt status just like "moneys paid" under the Social Security Act do. Mr. Guidry is therefore entitled to an exemption from garnishment of the uncommingled pension benefits held by him in his bank account.
 
 C.
 
 36
 In his petition for rehearing, Mr. Guidry also challenges the panel's resolution of his claims concerning the applicability of the Texas blanket pension exemption under the Texas anti-garnishment law. To the extent Mr. Guidry is claiming that the Texas statute applies to the attempted seizure of the funds in Texas, the claim is moot. Having stipulated that all issues concerning the attempted seizure of funds in Texas were rendered moot when the funds were transferred to Colorado, Mr. Guidry effectively stipulated the mootness of his claim that the Texas statute applies to this seizure.
 
 
 37
 To the extent that Mr. Guidry is arguing that the Texas statute nevertheless applies to funds after their transfer to Colorado, his claim is without any legal support. Mr. Guidry has cited no law to indicate that a Texas exemption would apply to a Colorado garnishment proceeding. In fact, the law is to the contrary. See Garrett v. Garrett, 490 P.2d 313, 315 (Colo.App.1971) ("Colorado follows the general rule that exemption laws have no extraterritorial effect.").
 
 
 38
 In summary, we REMAND this action for further proceedings in light of this opinion with respect to the Colorado statute governing exemption from garnishment.[11]
 
 
 39
 BRORBY, Circuit Judge, joined by STEPHEN H. ANDERSON and TACHA, Circuit Judges, dissenting.
 
 The rain it raineth on the just
 And also on the unjust fella:
 But chiefly on the just, because
 
 40
 The unjust steals the just's umbrella.
 
 
 41
 Charles Bowen, Thad Stem Jr., and Alan Butler, Sam Ervin's Best Short Stories (1973).
 
 
 42
 The majority today has ruled that a thief is free to keep the fruits of his crime under Colorado law. If the majority is correct, Colorado shines as a welcome beacon to all embezzlers proclaiming: Embezzle from your employer and keep your pension because Colorado law prohibits recovery. I do not read Colorado law as mandating this bizarre result; therefore, I respectfully dissent from this en banc decision on the matter of Mr. Guidry's claimed exemption from garnishment under Colorado law.
 
 
 43
 Colorado exempts seventy-five percent of certain types of "earnings" from garnishment. C.R.S. Sec. 13-54-104(2)(a). Prior to the 1991 amendments, the definition of "earnings" included "compensation paid or payable for personal services, whether denominated as ... avails of any pension or retirement benefits, or deferred compensation plan ... or otherwise." C.R.S. Sec. 13-54-104(1)(b) (emphasis added). At issue is whether the term "avails" was meant to include protection for benefits distributed and received by the participant or beneficiary.
 
 
 44
 As with any question of statutory interpretation, we begin with the language of the statute. The noun "avails" is defined as a "profit, benefit, value ... or proceeds." Webster's Third New Int'l Dictionary 150 (1981). In Black's Law Dictionary (6th ed. 1990), "profits" are defined as "the gross proceeds of a business transaction less the costs of the transaction; i.e. net proceeds." Id. at 1211. The definition of "proceeds" includes "[i]ssues; income; yield; receipts; produce; money or articles or other thing of value arising or obtained by the sale of property; the sum, amount, or value of property sold or converted into money or into other property.... The funds received from disposition of assets or from the issue of securities (after deduction of all costs and fees)." Id. at 1204.
 
 
 45
 The "avails" of pension benefits clearly contemplates the transition of funds from the plan to the participant or beneficiary. "Avails" includes a yield from the plan, received from its disposition of assets, following administrative costs and fees. Colorado law protects, then, not only funds within the plan but also the process of payment of the funds to the participant or beneficiary. Still, however, the plain language of Sec. 13-54-104(1)(b) does not define the status of funds once received. Here the funds have safely arrived into Mr. Guidry's bank account. At oral argument, counsel for Mr. Guidry argued that so long as funds remain traceable as pension plan benefits they remain exempt. See Rutter v. Shumway, 16 Colo. 95, 26 P. 321 (1891) (wages placed in bank account do not lose their exempt status as earnings). I disagree.[1]
 
 
 46
 The term "avails" can be extended only so far. During distribution, the pension plan hands payment to the participant or beneficiary. Once payment is received or directed to a bank, the pension plan lets go. Absent that clasp, that transaction, the term "avails" loses meaning. The term "avails" is further restricted by the entire definition of "earnings" under Colorado law. Avails of a plan only include "compensation paid or payable." C.R.S. Sec. 13-54-104(1)(b). Once "paid," a pension benefit loses its protected status. I find no indication that Colorado intended pension benefits, whose status as assets have shifted to nonexempt bank accounts, equities, or bonds, should remain exempt from garnishment, regardless of their ability to be traced.
 
 
 47
 This interpretation is supported by a comparison with other Colorado pension protection statutes. Acts providing pensions to state police and firemen state "no part of [the] fund, either before or after any order for the distribution thereof to the members or beneficiaries of such fund ... shall be held, seized, taken, subjected to, detained, or levied on by virtue of any attachment," except for child support purposes. C.R.S. Secs. 31-30-313(1) and 31-30-412(1) (1986 Repl.Vol. & Supp.1993) (emphasis added). Colorado knew how to provide continuous protection of pension funds following an order of benefits distribution and did not use similar language with the general earnings exemption. I therefore conclude Mr. Guidry's funds, upon receipt by the Denver bank, lost their exempt status under Sec. 13-54-104(1)(b).
 
 
 48
 The majority has concluded a faithless servant, an embezzler, a man who steals from the hard earned labors of the workers, is entitled to keep the fruits of his crime. I do not believe the Colorado legislature or the Colorado courts would permit such an unconscionable result. It is nonsensical to assume Colorado would want a thief to keep ill-gotten gains. Like Mr. Bumble of Oliver Twist,[2] I believe "[i]f the law supposes that, ... the law is a ass--a idiot," and I am not willing to believe Colorado law to be either.
 
 
 49
 The majority has used impeccable logic and marvelous analysis to conclude Colorado law mandates an unjust result. I cannot read Colorado law in such a fashion.
 
 
 
 [1]
 For a complete background, see Guidry v. Sheet Metal Workers Nat'l Pension Fund, 641 F.Supp. 360 (D.Colo.1986), aff'd, 856 F.2d 1457 (10th Cir.1988), rev'd, 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990), decision after remand, 10 F.3d 700 (10th Cir.1993)
 
 
 [2]
 We find no reason to further clarify or disturb the panel's analysis of the law of case. See Guidry II, 10 F.3d at 705-08, for the full discussion
 
 
 [3]
 Of the seven questions Mr. Guidry poses for rehearing, he does not question the panel's discussion of judicial admission and judicial estoppel. After a review of the panel opinion, we do not disturb its conclusions. See Guidry II, 10 F.3d at 715-16, for this discussion
 
 
 [4]
 This standard is met, for example, in the trust documents of the Sheet Metal Workers' National Pension Fund:
 No monies, property or equity, of any nature whatsoever in the Fund or policies or benefits or monies payable therefrom, shall be subject in any manner by an Employee or person claiming through such Employee to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien or charge, and any attempt to cause the same subject thereto shall be null and void.
 (Apt.App. to Answer and Reply, at 39.)
 
 
 [5]
 The remaining legislative history also explains the limited ten percent exemption to the alienation restriction found in Sec. 206(d)(2), 29 U.S.C. Sec. 1056(d)(2). "[A] plan will be permitted to provide for voluntary and revocable assignments (not to exceed 10 percent of any benefit payment)." H.R.Rep. No. 807, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 4670, 4734. Section 206(d)(2) does not apply to present case as "a garnishment or levy is not to be considered a voluntary assignment." H.R.Rep. No. 1280, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 5038, 5061
 
 
 [6]
 The panel opinion painstakingly concluded the Department of Treasury is within its authority to issue this ERISA regulation, 10 F.3d at 708-09, and the regulation is reasonable, 10 F.3d at 710-11. We need not reopen those issues
 
 
 [7]
 Mr. Guidry originally claimed an exemption under the federal Consumer Credit Protection Act but did not ask the en banc court to reconsider our panel's rejection of this exemption in his list of questions for rehearing. After a review of the panel opinion, we do not disturb its conclusion. Guidry II, 10 F.3d at 715
 
 
 [8]
 Effective May 1, 1991, mention of pension and retirement plans was deleted in the definition of "earnings" in Sec. 13-54-104(1)(b). See 1991 Colo.Sess.Laws 384, Sec. 3 (codified at Colo.Rev.Stat. Sec. 13-54-104(1)(b)(I) (Supp.1993)). Colo.Rev.Stat. Sec. 13-54-102(1) (1987) which previously made no mention of pension plans, was amended in May, 1991 to provide a one hundred percent exemption for "property,"
 including funds, held in or payable from any pension or retirement plan or deferred compensation plan, ... including pensions or plans which qualify under the federal "Employee Retirement Income Security Act of 1974" as an employee pension benefit plan, as defined in 29 U.S.C. sec. 1002....
 1991 Colo.Sess.Laws 383, Sec. 1 (codified at Colo.Rev.Stat. Sec. 13-54-102(1)(s) (Supp.1993)).
 
 
 [9]
 The relevant exemption provision stated:
 "There shall be exempt from levy under execution or attachment or garnishment the wages and earnings of any debtor to an amount not exceeding one hundred dollars, earned during the thirty days next preceding such levy,"
 ....
 Rutter, 26 P. at 322 (quoting Act of March 28, 1885, Sess.Laws p. 262) (emphasis added).
 
 
 [10]
 Although the wages at issue in Rutter may have been comingled, we limit our holding in this case to the facts before us, which establish that the funds here were not comingled and retained their identity as pension benefits
 
 
 [11]
 In his original appeal, Mr. Guidry claimed that the district court abused its discretion in denying his request for attorneys fees. On rehearing, Mr. Guidry made specific arguments and also requested a rehearing on all other issues within the panel opinion, although he did not specifically reassert his earlier argument on the fee issue. Assuming that the issue is properly before the en banc court, we find no grounds for reversing the district court's ruling that Mr. Guidry was not entitled to a fee award under the ERISA fee-shifting provision, 29 U.S.C. Sec. 1132(g). See Downie v. Independent Drivers Ass'n Pension Plan, 945 F.2d 1171, 1172 (10th Cir.1991) (district court decision on a fee award under section 1132(g) reviewed for abuse of discretion)
 
 
 [1]
 The majority contends we are bound by Rutter, 26 P. 321. In Rutter, the Colorado Supreme Court, over one hundred years ago, ruled the garnishment exemption continues to apply to wages after they have been deposited into the wage earner's bank account. Id. at 322. Rutter is still good law in Colorado
 Without attempting any comment on the scope of the garnishment exemption upon wages, Rutter does not change the interpretation of the scope of pension fund protection. The Rutter court did not specifically comment on the legislature's intent to protect pension benefits as it would protect wages, assuming pension benefits were exempt from garnishment in 1891. To the contrary, the recent amendments to the garnishment scheme show the Colorado legislature is content to treat pension benefits as a completely separate category from wages. See 1991 Colo.Sess.Laws 383 Secs. 1, 3. Because I would not grant Mr. Guidry's state law exemption, I will not address the deeper questions of federal preemption.
 
 
 [2]
 Oliver Twist, Charles Dickens 520 (Dodd, Mead & Co. 1941) (1838)