**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Charles Herbert SMITH, Defendant–Appellant.**

No. 93–5426.

United States Court of Appeals, Fourth Circuit.

Argued March 7, 1994.

Decided March 3, 1995.

**ARGUED:** Denise Charlotte Barrett, Asst. Federal Public Defender, Baltimore, MD, for appellant. Christopher Bowmar Mead, Asst. U.S. Atty., Baltimore, MD, for appellee. **ON BRIEF:** James K. Bredar, Federal Public Defender, Baltimore, MD, for appellant. Lynne A. Battaglia, U.S. Atty., Raymond A. Bonner, Asst. U.S. Atty., Baltimore, MD, for appellee.

Before ERVIN, Chief Judge, WILLIAMS, Circuit Judge, and SPROUSE, Senior Circuit Judge.

Vacated and remanded by published opinion. Chief Judge ERVIN wrote the opinion, in which Senior Judge SPROUSE joined. Judge WILLIAMS wrote a dissenting opinion.

## OPINION

ERVIN, Chief Judge:

On September 24, 1992, a federal grand jury indicted Dr. Charles Smith on six counts

of mail and wire fraud stemming from his nine year campaign to solicit investments from numerous friends and acquaintances for fraudulent real estate schemes. Smith's fraud caused losses of over $200,000. On March 25, 1993, pursuant to a plea agreement, Smith pled guilty to count one of the indictment charging him with wire fraud in violation of 18 U.S.C. § 1343. The plea agreement called for a 21–month sentence and a recommendation that the sentencing court order restitution based on Smith's financial means. The district court ordered Smith to turn over upon receipt each month the entire amount of his pension benefits payable under an ERISA plan. Smith appeals the restitution order on the basis of ERISA's anti-alienability provisions. For the reasons set forth below, we vacate the restitution order and remand for its redetermination.

## I.

The parties stipulated to the facts in the plea agreement. Smith is a former public school principal, Johnson Administration official, and employee of the Rockefeller Foundation, with extensive personal contacts in government and education. At the time of these events, he was an independent educational consultant engaged in producing educational videos.

Beginning in 1983, Smith solicited at least fifty friends and acquaintances for investments in fraudulent business schemes, including investments in land deals in the "Caribbean Group." Smith implied that the investments were supported by his former employer, the Rockefeller Foundation. The fraud victims made checks payable to Smith or wired money directly to accounts controlled by Smith. In one instance, a check was made out to Smith's landlord who credited the amount to Smith's rent bill. Smith converted the majority of the money collected to his personal use. He lied and made excuses when pressed by the investors, concealing his fraud. The amount of the loss was at least $200,000 and probably greater than $350,000.

Upon arrest, Smith expressed remorse for his crime and a desire to pay restitution upon his release from prison. The revised Presentence Report ("PSR") indicated that Smith receives $1,188 per month in pension benefits from two separate ERISA plans, that he would become eligible on May 6, 1993 for social security benefits probably amounting to $602 per month, and that his wife receives a net monthly salary of $1900 from her employment as a third grade school teacher. The PSR recommended restitution that would require Smith to relinquish upon receipt his entire $1188 monthly pension benefits over a period of five years after his release from prison, with slightly lower payments while he is in jail. The district court accepted the recommendation and ordered Smith to turn over his pension benefits each month as he received them upon his release from prison.

## II.

The Employee Retirement Income Security Act (ERISA) provides that "each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). Binding Treasury Department Regulations further prohibit involuntary transfers of benefits from qualified plans by requiring that "benefits provided under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process." 26 C.F.R. § 1.401(a)-13(b)(1).

This court has long recognized a "strong public policy against the alienability of an ERISA plan participant's benefits." *Smith v. Mirman,* 749 F.2d 181, 183 (4th Cir.1984). The Supreme Court, as well, has found that it is not "appropriate to approve any generalized equitable exception—either for employee malfeasance or for criminal misconduct—to ERISA's prohibition on the assignment or alienation of pension benefits." *Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 493 U.S. 365, 376, 110 S.Ct. 680, 687, 107 L.Ed.2d 782 (1990) *("Guidry").* In *Guidry,* the Court was faced with the competing policies of ERISA and the Labor–Management Reporting and Disclosure Act of 1959 (LMRDA), which was designed to prevent the corruption of union officials. The Court

refused to allow ERISA pension benefits to be used to effectuate the remedial goals of LMRDA because such use would imply that "ERISA's anti-alienation provision would be inapplicable whenever a judgment creditor relied on the remedial provisions of a federal statute. Such an approach would eviscerate the protections of [ERISA]." *Id.* at 375, 110 S.Ct. at 687.

■ The government urges that *Guidry* is inapplicable because that case prohibited alienation of funds that had not yet been disbursed to the beneficiary. The government's position is that once pension funds have been distributed, the anti-alienability statute no longer applies. It finds support for that argument in this court's decision in *Tenneco Inc. v. First Virginia Bank,* 698 F.2d 688 (4th Cir.1983).* In that case, when a subsidiary of Tenneco terminated the employment of Donald Sweeney before he reached retirement age, all accrued benefits under his ERISA pension plans became payable to him within a reasonable time after his request. Sweeney drew down over $37,000, with over $5,000 remaining in the hands of the trustee of the plans. First Virginia Bank obtained a judgment against Sweeney after he had withdrawn the funds, and it sought to compel payment from both the funds distributed and those remaining in the plans. This court held that where the beneficiary had taken a preretirement draw of a lump sum due upon termination of his employment, although the funds had originated in an ERISA account, they were not forever immune from attachment by creditors. *Id.* at 691. The bank was permitted to garnish the funds that had been distributed to Sweeney. We also found, however, that the funds remaining in the hands of the trustee were beyond the reach of a writ of garnishment. *Id.* at 690.

■ We believe there is a distinction between funds disbursed from an ERISA plan before an employee has retired and such funds paid as an annuity for retirement purposes. The Supreme Court has noted that the purpose of ERISA is to safeguard a stream of income for pensioners. *Guidry,* 493 U.S. at 376, 110 S.Ct. at 687. Where an employee elects to draw on her ERISA plan prior to her retirement, she forfeits the protection provided by the Act. Where, however, the funds are paid pursuant to the terms of the plan as income during retirement years, ERISA prohibits their alienation. In fact, we found in *Tenneco* that "the funds here had been accumulated under a general plan for retirement, and the statutory scheme clearly contemplates that they should remain available for that purpose...." 698 F.2d at 690.

This distinction is supported by the Supreme Court's decision in *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979). There, the Court found that pension annuities cannot be alienated even once disbursed to the beneficiary. In that divorce case, a spouse attempted to gain an interest in her husband's pension benefits due under the Railroad Retirement Act (RRA). The RRA contains anti-alienation provisions substantially similar to those in ERISA, prohibiting annuity funds from being subject to assignment, anticipation, garnishment, attachment or other legal process, with statutory exceptions for child support and alimony. *Id.* at 576, 99 S.Ct. at 805. In ruling that the district court could not retain jurisdiction over the husband and order him to pay an appropriate portion of his benefits as he received them, the Court found that such a "course ... runs contrary to the language and purpose of [the statute] and would mechanically deprive petitioner of a portion of the benefit Congress ... indicated

* The Tenth Circuit, upon remand of *Guidry,* likewise found that pension funds, once distributed, are no longer protected. *Guidry v. Sheet Metal Wkrs. Intern. Ass'n, Local 9,* 10 F.3d 700 (10th Cir.1993) (*"Guidry II"*). The court found that although the Supreme Court had invalidated a constructive trust placed on pension funds due but not yet paid to Guidry, the Court's mandate did not prohibit garnishment of the funds once distributed to Guidry. The Third Circuit has followed this reasoning. *Trucking Employees of North Jersey Welfare Fund Inc. v. Colville,* 16 F.3d 52 (3d Cir.1994). We decline to adopt this approach. We believe that the reasoning in *Guidry II* circumvents the logic of *Guidry* and *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), as discussed *infra.*

was designed for him alone." *Id.* at 583, 99 S.Ct. at 809.

In the case at hand, the government attempted to require Smith to draw down his benefits due under the plans as a lump sum and turn it over intact as restitution. J.A. 30. Upon discovering that Smith was not eligible for lump sum distribution, the government agreed to the recovery of his benefits as they are paid to him. It is clear that the government would not have been successful in requiring Smith to request a lump sum distribution. As this court held in *Tenneco,* benefits in the hands of the fiduciary are beyond the reach of garnishment. 698 F.2d at 690. The government should not be allowed to do indirectly what it cannot do directly; it cannot require Smith to turn over his pension benefits in a lump sum, nor can it require him to turn over his benefits as they are paid to him. "Understandably, there may be a natural distaste for the result we reach here. The statute, however, is clear." *Guidry,* 493 U.S. at 377, 110 S.Ct. at 688. Congress has made a policy decision to protect the ERISA income of retirees, "even if that decision prevents others from securing relief for the wrongs done them." *Id.* at 376, 110 S.Ct. at 687.

The Court further noted "as a general matter, courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text." *Id.* This court, too, has noted

> the danger in eroding through exception the anti-alienation policy of ERISA. That entire legislation was aimed at guaranteeing the security of retirement income for American workers.... We decline to participate in the diminution of these safeguards in circumstances which might seem harmless enough in particular instances but which, in the aggregate, might invite creditors to believe that ERISA funds are not, after all, inviolate.

*Smith,* 749 F.2d at 184.

The Government claims that the policy governing restitution under the Victim and Witness Protection Act obligates the defendant to make restitution payments regardless of the source of his income. This policy

does not alter the Supreme Court's findings that ERISA funds are inviolate with exceptions only as announced by Congress. *Guidry,* 493 U.S. at 377, 110 S.Ct. at 687. It is not for the courts to determine when exceptions to ERISA are appropriate.

### III.

The restitution order in this case clearly required Smith to relinquish his pension benefits. The district court stated, "Well, he will be paying amounts, or pension [sic], and, once those sums are in his hands, it seems to me that they are subject to the existing order of this court announced today." J.A. 60. That approach is impermissible. Smith cannot be forced to relinquish his ERISA pension benefits for restitution.

On remand the court must determine an appropriate amount of restitution that Smith must pay based on his financial resources. Although the court cannot mechanically deprive Smith of his pension benefits, it can determine restitution based on a balance of the victims' interest in compensation and Smith's other financial resources. *United States v. Bruchey,* 810 F.2d 456, 458 (4th Cir.1987). Although the district court may determine an appropriate amount of restitution based on its findings as required by *Bruchey,* it must make that determination while leaving Smith's ERISA-protected benefits in his possession. Congress requires that ERISA beneficiaries retain their pension benefits for retirement purposes.

### IV.

The district court's restitution order is vacated and remanded for redetermination.

*VACATED AND REMANDED.*

WILLIAMS, Circuit Judge, dissenting:

I am unable to accept the majority's conclusion that the anti-alienation provision of ERISA precludes the district court from entering a restitution order that takes into consideration Smith's retirement income as a source from which, when received, he can make payments to compensate the numerous

victims of his criminal acts.[1] In my opinion, the majority errs in relying on two Supreme Court decisions which do not answer the question before us and in creating a circuit split with two Courts of Appeal that have confronted the question. Accordingly, having discerned no error on the part of the district court in the formulation of its restitution order, I respectfully dissent from the majority opinion and would affirm the decision of the district court.

The majority primarily bases its decision on *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 376, 110 S.Ct. 680, 687, 107 L.Ed.2d 782 (1990). In *Guidry*, the Supreme Court addressed whether the imposition of a constructive trust by the district court violated the statutory prohibition on assignment or alienation of pension benefits under § 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1). *Id.* Specifically, in that case, Guidry had not received any pension benefits at the time the district court imposed the constructive trust. The Court held that § 206(d)(1) applied to garnishment proceedings and that the imposition of a constructive trust remedy in such a setting violated ERISA. *Id.* at 376–77, 110 S.Ct. at 687–88. Important for this case, the Supreme Court reasoned that it would be inappropriate "to approve any generalized equitable exception—either for employee malfeasance or for criminal misconduct—to ERISA's prohibition on the assignment or alienation of pension benefits." *Id.* at 376, 110 S.Ct. at 687. This proposition forms the basis, in large part, upon which the majority decides this case. Op. at 682–84.

While I certainly agree with the majority that under *Guidry* the federal courts are not to fashion equitable exceptions to the assignment and alienation provision of ERISA, I conclude that *Guidry* does not resolve the specific issue before us which *can* be decided under the statute: whether § 206(d)(1) of ERISA and the Department of Treasury's interpretation of "assignment" or "alienation" in the Treasury Regulations, Treas. Reg.

1.401(a)–13(c), prohibit a restitution order that may affect pension benefits that Smith will have received at the time a payment is to be made. The best demonstration of this difference comes from the Tenth Circuit Court of Appeals on remand of *Guidry*. Unable to impose a constructive trust over Guidry's pension plan, the district court on remand was confronted with whether it could issue an order that imposed garnishment of benefits *after* they were paid to Guidry. *Guidry v. Sheet Metal Workers Int'l Ass'n*, 10 F.3d 700, 704–05 (1993) (*Guidry II* ), modified on reh'g and remanded on other grounds, 39 F.3d 1078 (10th Cir.1994) (en banc). The district court held that it could. On appeal, one of Guidry's main contentions was that the kind of order the district court could issue had been resolved by the Supreme Court. *Id.* at 705. The Tenth Circuit disagreed, reasoning:

> The Supreme Court, in considering a constructive trust, (1) held that ERISA § 206(d)(1) applied to garnishment proceedings, *Guidry*, 493 U.S. at 371–72, 110 S.Ct. at 684–85; and (2) reversed the imposition of a constructive trust over the pension benefits of Mr. Guidry in the plan, *id.* at 376–77, 110 S.Ct. at 687. This case, in contrast, involves a writ of garnishment issued by a Colorado court upon the garnishee, First Interstate Bank, subjecting the pension funds of Mr. Guidry in the account to the process of garnishment. This case, therefore, is factually distinct from *Guidry* in the critical respect that the garnishment process is *over funds that Mr. Guidry has received,* whereas the constructive trust invalidated by *Guidry* was *over benefits in the plan.*

*Guidry II,* 10 F.3d at 706 (emphasis added). The panel's reasoning was unanimously upheld when the question was considered by the Tenth Circuit *en banc. Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 39 F.3d 1078, 1081 (10th Cir.1994) (en banc) (*Guidry III* ).[2] For the same reasons offered by the

---

1. Of course, should Mr. Smith's financial condition change, he would be able to apply to the court for a modification of the restitution payments. 18 U.S.C.A. § 3663(g) (West 1985 & Supp.1994).

2. It is worth noting that, procedurally, the *en banc* court in *Guidry III* did not vacate the panel opinion in *Guidry II.* In fact, the *en banc* court relied in large part upon the analysis offered by the panel in its discussion of what issues were

Tenth Circuit on remand, I believe that the *Guidry* decision does not resolve the issue presented here and that we must take a fresh look at the relevant statutory and regulatory provisions.

Since the issuance of *Guidry* two of our sister circuits have addressed the issue we face and held that pension funds, once distributed, are no longer protected under § 206(d)(1). *Guidry II,* 10 F.3d at 705–08, *Guidry III,* 39 F.3d at 1081–83; *Trucking Employees of North Jersey Welfare Fund v. Colville,* 16 F.3d 52, 55 (3rd Cir.1994). I agree with the reasoning offered in these decisions and, for the purposes of this dissent, will simply summarize the major points in their decisions. To begin, the relevant statutory text in § 206(d)(1), "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated," 29 U.S.C. § 1056(d)(1), is ambiguous when one attempts to discern the meaning of "benefits provided under the plan." *Guidry II,* 10 F.3d at 708. Given the ambiguity in the text of the statute, the *Guidry II* and *Trucking Employees* courts turned to the Department of Treasury regulation which define "assignment" and "alienation" as:

> Any direct or indirect arrangement (whether revocable or irrevocable) whereby a party acquires from a participant or beneficiary a right or interest *enforceable against the plan* in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary.

Treas. Reg. § 1.401(a)–13(c)(1)(ii) (emphasis added). As did the courts in *Guidry II* and *Trucking Employees,* I would hold that while there is admittedly some tension between the general principle under ERISA of protecting the beneficiary's retirement benefits and the Department of the Treasury's interpretation of the anti-alienation provision, the agency's interpretation is clear, reasonable, and entitled to deference under *Chevron, U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *Trucking Employees,* 16 F.3d at 55–

56 (applying interpretation to restitution order); *Guidry II,* 10 F.3d at 710 (applying interpretation to garnishment proceeding). Under the above-stated regulatory provision, the restitution order against Smith's "received retirement income is not an action against the plan[;] it is not prohibited by ERISA § 206(d)(1) as implemented by the ERISA Regulations." *Guidry II,* 10 F.3d at 710. Following our two sister circuits, I would hold that pension funds, once distributed, are no longer protected under § 206(d)(1).

This conclusion is further bolstered by our decision in *Tenneco Inc. v. First Virginia Bank,* 698 F.2d 688, 690–91 (4th Cir.1983). In *Tenneco,* we confronted a question substantially similar to the one at issue here. The question there was whether an employee's interest in an ERISA plan was "subject to garnishment by a judgment creditor of the employee." *Id.* at 689. The discussion in that case turned in large part on the fact that when the employee was terminated, all accrued benefits "became payable to him within a reasonable time after his request." *Id.* Interpreting the substantially similar language contained in Treas. Reg. § 1.401(a)–13(b)(1), we held that the balances remaining in the employee's pension accounts were not garnishable, but that those funds that had been withdrawn by the employee (and not rolled-over into another qualified plan within the allowed sixty-day period) were garnishable. *Id.* at 690–691. In so holding, we rejected the employee's argument that any funds, whether paid out to him or not, that had accumulated in the pension accounts were "forever immune" from attachment by a creditor. Specifically, we held that we could find "[n]o provision of ERISA" that would support protection for the funds once they were no longer in a qualified ERISA approved plan. *Id.* at 691. In short, as I read *Tenneco,* we drew a distinction between the protection afforded benefits still in the hands of the trustee and the protection afforded distributed funds in the hands of the beneficiary—exactly the proposition es-

and were not resolved when the Supreme Court had previously heard the case. *Guidry III,* 39 F.3d at 1081 n. 2 ("We find no reason to further

clarify or disturb the panel's analysis of the law of [the] case. *See Guidry II,* 10 F.3d at 705–08, for the full discussion.").

poused by the courts in *Guidry II* and *Trucking Employees.*

The majority attempts to avoid this interpretation by narrowly construing the holding in *Tenneco* to draw "a distinction between funds disbursed from an ERISA plan before an employee has retired [*Tenneco*] and such funds paid as an annuity for retirement purposes [this case]." Slip Op. at 5. Finding nothing in the ERISA statutory text or regulations to support a distinction between disbursed funds before and after retirement, the majority relies on the Supreme Court's decision in *Guidry* for support of the proposition that "the purpose of ERISA is to safeguard a stream of income for pensioners." *Id.* Once again, while I agree with this general principle, I cannot agree with its application where ERISA's statutory language and regulations make clear that the benefits, once distributed, may be attached. Left without support from *Guidry,* the majority puts forth the following without any direct support from ERISA or case law: "Where an employee elects to draw on her ERISA plan prior to her retirement, she forfeits the protection provided by the Act. Where, however, the funds are paid pursuant to the terms of the plan as income during retirement years, ERISA prohibits their alienation." Op. at 683. I cannot agree with such a distinction.

Finally, I do not find support for the majority's pre-retirement/post-retirement distinction in *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979). In *Hisquierdo,* the Supreme Court determined that a spouse's expectation of receiving railroad retirement benefits (not an ERISA-covered plan) was not subject to allocation and division between spouses by a state domestic court. *Id.* at 590–91, 99 S.Ct. at 812–13. In reaching this conclusion, however, the Court, noting the prohibition on alienation of benefits to a divorced spouse under 45 U.S.C. § 231d(c)(3), *id.* at 585–86, 99 S.Ct. at 810–11, merely implemented the express intent of Congress specified in the Railroad Retirement Act (the RRA). 45 U.S.C. § 231m(a). The text of § 231m(a) states, in relevant part:

> Notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process *under any circumstances whatsoever,* nor shall the payment thereof be anticipated....

*Id.* (emphasis added). The majority reads this provision as being "substantially similar" to the anti-alienation provision at stake in this case. Op. at 683. I cannot agree, as there is nothing in either ERISA's text or regulatory provisions suggesting an equivalent breadth of protection to benefits as preventing alienation "under any circumstances whatsoever." Accordingly, while *Hisquierdo* may—like the Supreme Court decision in *Guidry*—support the general proposition that courts should not generally favor allowing the beneficiary to lose his benefits, the case simply does not answer the more precise inquiry of statutory interpretation that I believe must be addressed in order to resolve this case. The decision of the majority fails to account for the clear language of the Treasury regulation to which we owe deference as a reasonable agency interpretation. Furthermore, it is at odds not only with the law of this circuit but also with that articulated by the Third and Tenth Circuits. Since neither of the Supreme Court opinions cited by the majority appears to control the question, I wonder that the majority has chosen to ignore a reasonable agency interpretation of § 206(d)(1) and create a split among the circuits to reach such a seemingly inequitable result which denies restitution to victims of illegal conduct. I, therefore, respectfully dissent.