**PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, et al., Plaintiffs,**

**Connecticut Valley Electric Company and Central Vermont Public Service Corporation, Intervenors, Appellees,**

v.

**Douglas L. PATCH, Chairman of the State of New Hampshire Public Utilities Commission, et al., Defendants, Appellants.**

No. 99–1754.

United States Court of Appeals, First Circuit.

Heard Dec. 8, 1999.

Decided Jan. 24, 2000.

---

Michael E. Tucci, with whom Steven K. White, Morrison & Hecker L.L.P. and Gary Epler, General Counsel, New Hampshire Public Utilities Commission, were on brief for defendants, appellants Douglas L. Patch, Susan S. Geiger and Nancy Brockway, Chairman and Commissioners of the State of New Hampshire Public Utilities Commission.

Lee A. Freeman, Jr. with whom John F. Kinney, James T. Malysiak, Glynna W. Freeman, Freeman, Freeman & Salzman, P.C., Joseph M. Kraus, Senior Vice President and General Counsel, Central Vermont Public Service Corporation, Dom S. D'Ambruoso, John T. Alexander and Ransmeier & Spellman were on brief for intervenors, appellees Connecticut Valley Electric Company and Central Vermont Public Service Corporation.

Before SELYA, Circuit Judge,
BOWNES, Senior Circuit Judge, and
BOUDIN, Circuit Judge.

BOUDIN, Circuit Judge.

This appeal is a sequel to prior litigation growing out of the same district court proceeding.[1] Once again, the issues relate to interim matters; the merits have not yet been decided in the district court. To avoid repetition, familiarity with our prior decisions is assumed; and we confine ourselves to a bare-bones summary limited to events necessary for this appeal.

In 1997, acting under recently enacted state legislation, the New Hampshire Public Utilities Commission ("the Commission") issued a plan and implementing orders to restructure electric power regulation in the state. The new regime, aimed at promoting competition through various means including market-based rates, created a risk that existing utilities might not be able to recover their full investment in previously built facilities. The largest utility in the state, Public Service Company of New Hampshire ("PSNH"), obtained a preliminary injunction in the district court based, *inter alia,* on a colorable claim that the state's action violated a specific agreement with that company and so also violated bankruptcy court orders and the Contract Clause of the U.S. Constitution. *See Patch IV,* 167 F.3d at 21, 26, 28.

In our principal decision issued in 1998—*Patch IV*—we upheld this preliminary injunction and, with somewhat greater reluctance, its extension by the district court to other New Hampshire utilities that had intervened, including Connecticut Valley Electric Company ("Connecticut Valley"). *Id.* at 27–29. However, in the same proceeding, the district court had also ordered the Commission to allow a specific rate increase sought by Connecticut Valley to recover increased power costs which the Commission had previously disallowed in December 1997, *see Patch V,* 167 F.3d at 32–33; in our companion decision—*Patch V*—we vacated the district court's injunction in this respect, holding

---

1. *Public Serv. Co. of New Hampshire v. Patch,* 962 F.Supp. 222 (D.N.H.1997) (*Patch I*); *Public Serv. Co. of New Hampshire v. Patch,* 173 F.R.D. 17 (D.N.H.1997) (*Patch II*); *Public Serv. Co. of New Hampshire v. Patch,* 136 F.3d 197 (1st Cir.1998) (*Patch III*); *Public Serv. Co. of New Hampshire v. Patch,* 167 F.3d 15 (1st Cir.1998) (*Patch IV*); *Public Serv. Co. of New Hampshire v. Patch,* 167 F.3d 29 (1st Cir.1998) (*Patch V*), *cert. denied,* —— U.S. ——, 119 S.Ct. 1458, 143 L.Ed.2d 544 (1999).

that Connecticut Valley had not shown a likelihood of prevailing in federal court on this aspect of the case. *Id.* at 36.

Following our decisions, the Commission and PSNH engaged in negotiations and have been moving toward a possible settlement of their differences. While proceedings in the district court as to a permanent injunction for PSNH have been deferred pending approval of the settlement, litigation between the Commission and Connecticut Valley has moved forward; several months ago both sides argued cross-motions for summary judgment on the merits of permanent relief. During this same period, two new and quite distinct disputes have arisen—one relating to the preliminary injunction upheld in *Patch IV* and the other to the further interim relief that we disallowed in *Patch V.*

The first of these two disputes stems from a new motion filed by the Commission after *Patch IV* asking the district court to vacate its earlier injunction barring the New Hampshire restructuring plan. That injunction had rested primarily, as preliminary injunctions normally do, *see Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 15 (1st Cir.1996), on a showing of likelihood of success on the merits coupled with a showing of threatened irreparable injury. The irreparable injury showing, initially made by PSNH, rested in part on an accounting convention regarding the financial treatment of so-called regulatory assets; according to PSNH's affidavits, the proposed New Hampshire restructuring plan would have triggered changes in the company's financial statements, placing it in immediate default on huge bank loans.

Our decision in *Patch IV* affirming the preliminary injunction against the restructuring plan was rendered on December 3, 1998. On January 18, 1999, the Commission moved to vacate the injunction, primarily on the ground that changes in accounting treatment by the Financial Account Standards Board had eliminated the threat relied upon by PSNH in its original showing of irreparable injury. Connecticut Valley vigorously opposed the motion. The district court's decision on this motion is the first issue on this appeal.

The second dispute arises in the wake of our decision in *Patch V* vacating a different aspect of the district court's *pendente lite* relief. As noted above and explained in detail in *Patch V,* even before its restructuring plan was scheduled to be implemented, the Commission had disallowed an attempt by Connecticut Valley in December 1997 to implement a specific rate increase designed to pass along to its customers a routine increase in the cost of power it purchases from its parent and wholesale supplier, Central Vermont Public Service Company ("Central Vermont"). The Commission took the view that while the increase in Connecticut Valley's costs was real, purchasing from Central Vermont was no longer prudent because power could currently be bought for less on the open market. 167 F.3d at 32. Connecticut Valley had a long-term requirements contract with Central Vermont, but the Commission deemed it to be terminable on short notice.

Without sharply distinguishing between this specific disallowance by the Commission and its far-reaching restructuring plan, the district court in April 1998 directed the Commission to allow the increase. It was this further preliminary relief that we found not to be justified because (in our view) Connecticut Valley had failed to show that it was likely to prevail on the merits in its ultimate challenge to this disallowance in federal court. Our *Patch V* decision vacated this aspect of the district court's preliminary injunction, thereby permitting the Commission to roll back Connecticut Valley's retail rates to the pre–1998 level, *see* 167 F.3d at 36.

The Commission not only rolled back the rate increase but also ordered further temporary reductions by Connecticut Valley, *below* the level prevailing in December

1997, in order to flow back to customers the amount of the increases that had been collected between the time of the district court's injunction with respect to the disallowance and the later vacation of that injunction in *Patch V.* Connecticut Valley then asked the district court to enjoin the Commission from requiring this further reduction until the district court decided the merits of Connecticut Valley's request for a permanent injunction requiring the Commission to allow the company to charge rates sufficient to cover all of its costs. The Commission opposed the request.

On April 7, 1999, after a hearing, the district court entered an order refusing to dissolve the preliminary injunction upheld in *Patch IV* and granting in substance the additional relief sought by Connecticut Valley to defer any flow-back of the increase that the company had collected before this court vacated the district court's April 1998 injunction in that respect in *Patch V.* The district court did not discuss at length its reasons for the first of these actions; but it wrote several paragraphs of findings and explanations with respect to the second. The Commission now appeals, challenging both aspects of the district court's order.

■ On this appeal, little need be said about the district court's refusal to modify the preliminary injunction enjoining the Commission's restructuring plan. PSNH's original showing of irreparable injury did depend in part on the issue of the then-current accounting treatment of so-called regulatory assets; but the threatened accounting treatment merely accelerated and made more dramatic the adverse consequences of the plan for PSNH. It was credibly alleged, at least sufficiently for preliminary relief, that the restructuring plan, as framed at the time, would prevent PSNH from ever recovering very substantial prior investments assertedly protected

by a specific contract with the state and by implementing orders of the bankruptcy court.

When in early 1998 Connecticut Valley joined PSNH in seeking interim relief, it provided arguments and affidavits of its own to demonstrate the harm that the restructuring plan would do to it. Once again, the projected accounting treatment of regulatory assets was one of several strands in the showing of harm to Connecticut Valley. But, as is shown by even a brief review of the company's motion papers, it was certainly not the only one— nor was the greatest dollar impact on the company attributed to this accounting requirement.

As we pointed out in *Patch IV,* 167 F.3d at 23, 28, the Commission made little effort to challenge the showing of irreparable injury by either PSNH or Connecticut Valley. Only the most significant change in circumstances would require the district court to revisit that issue. Yet the change in accounting treatment now trumpeted by the Commission was apparently made in July 1997, over a year *before* our decision in *Patch IV* upholding the same injunction. If the Commission thought that this adjustment changed everything, it certainly should have stressed this in its original appeal in *Patch IV,* or asked for a remand to consider the effect of the change. In any event, the district court did not abuse its discretion in refusing to modify the preliminary injunction based on the accounting change.

The district court's new prohibition of the Commission's further reduction in Connecticut Valley's rates is an entirely different matter. In part, the company's defense of this new relief rests on a narrow ground, namely, on case law that the company argues allows a court to defer claims of restitution stemming from a vacated preliminary injunction until the merits have been decided.[2] However, Con-

---

**2.** *See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 119

S.Ct. 1961, 1966, 144 L.Ed.2d 319 (1999) (noting that usually, if a plaintiff is found to

necticut Valley's defense also involves a view of our prior decisions in *Patch IV* and *V* that is not consistent with those decisions and may have implications for any further interim disputes and possibly for the merits of this case. For this reason, we revisit briefly the scope and rationale of our earlier decisions.

Ordinarily, a district judge has a great deal of freedom to impose interim relief and, in particular, to preserve the status quo in all matters properly before it. But efforts by utilities to enjoin state rate orders are not ordinary cases and relief—interim or permanent—is severely restricted, especially by the so-called *Burford* abstention doctrine, *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and by the Johnson Act, 28 U.S.C. § 1342 (1994). Broadly speaking, the staples of utility-company appeals—attacks under state law or based on due process—are severely limited when made in federal courts. *See Patch IV,* 167 F.3d at 24–25. PSNH barely threaded its way through this maze of limitations in obtaining a preliminary injunction against the restructuring plan—relief extended to the other utilities partly based on defaults by the Commission. *Id.* at 28.

However, thus far in the district court neither PSNH nor any other company has justified relief—consistent with *Burford* and the Johnson Act—against any rate orders of the Commission *except* its attempts to implement the restructuring plan. The orders of the Commission refusing to allow Connecticut Valley to re-cover the cost increases imposed by Central Vermont are *not* orders implementing that plan, which is why in *Patch V* we vacated the further relief granted by the district court. This is equally true of the Commission's latest order lowering rates temporarily below the December 1997 rate to refund the amounts collected under the vacated *Patch V* injunction.

■ In its brief and at oral argument, Connecticut Valley made clear that it thinks that the district court has assured the company *pendente lite* of its right to collect "its costs," a goal frustrated in part by this court's supposed failure to understand that cost recovery is the status quo that the district court has sought to preserve. However, what *Patch IV* and *V* sought to make clear is that no such assurance is valid; the district court's injunctive relief was sustained only against orders implementing the restructuring plan. If injunctive relief is to extend beyond such orders, it must be independently justified. True, the restructuring plan and the disallowance and refund orders against Connecticut Valley both may undermine cost recovery; but the former has been validly enjoined *pendente lite* and the latter has not.[3]

This leaves open the possibility that the district court's latest action deferring any refund can be justified on a narrower set of grounds. The decisions relied on by Connecticut Valley, *see* note 2 above, reflect a common-sense policy that allows a district court to wait until the end of a case to undo any mischief wrought by interim

---

be entitled to a permanent injunction, the earlier improper issuance of a preliminary injunction is harmless error); *Polymer Tech. Corp. v. Mimran,* 975 F.2d 58, 64 (2d Cir. 1992) ("[A]n award from an injunction bond prior to final judgment is premature."); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 910 F.2d 1049, 1054 (2d Cir. 1990) (noting that to decide whether a preliminary injunction was wrongfully issued, the court should analyze whether, "in hindsight in light of the ultimate decision on the merits after a full hearing, the injunction should not have issued in the first instance").

3. The status quo with respect to the restructuring plan is not to implement that plan. The fact that the status quo is disturbed in other respects by Commission orders—*e.g.,* by the disallowance of cost recoveries previously allowed as prudent (the issue in *Patch V*) or by the refund order (at issue here)—does not offend the district court's injunction insofar as it was sustained in *Patch IV*. This does not mean that the latter orders are lawful but only that grounds for a federal injunction against them have not yet been made out.

relief it granted in error. This often makes sense because the final outcome may affect the amount of any restitution or damage relief, or show that nothing at all should be repaid, even though the preliminary relief was wrongly granted in the first place.

But here the district court is not deferring a restitution order of its own; it is enjoining the Commission from ordering restitution on the Commission's own authority. Agencies like the Commission often require refunds of rates "wrongly" collected. Unless the original Commission order disallowing the Connecticut Valley increase is vulnerable to injunction *by a federal court*, it is hard to see what authority a federal court has to defer the Commission-ordered refund. And, as we explained in *Patch V*, 167 F.3d at 35–36, Connecticut Valley has not yet made such a showing of likely vulnerability as to the disallowance order.

This is not because the Commission's disallowance order is sound. At best, the state agency may be exploiting a possible drafting mistake—the short-notice termination clause in the original contract between the two utilities—to shift to Central Vermont (or to Vermont ratepayers) what may well have been Connecticut Valley's prudently incurred costs of achieving long-term rate protection for its New Hampshire customers. *See Patch V*, 167 F.3d at 36. If so, there may be a remedy available to Connecticut Valley in state court and, in any event, if Central Vermont prevails at the Federal Energy Regulatory Commission ("FERC") and is allowed to impose a termination charge on Connecticut Valley, the Commission may be forced to retreat from its effort to compel the contract termination, thereby undermining its rationale for its disallowance order.

Nevertheless, given the limitations imposed by *Burford* and the Johnson Act, it remains unclear why Connecticut Valley thinks that it can overturn the disallowance order in federal court. Its own Contract Clause argument is quite different from that of PSNH, which implicated a specific bankruptcy settlement formally approved by the state; and, lacking a connection to federal bankruptcy orders, Connecticut Valley's Contract Clause claim may, even if otherwise sound, face some difficulty in federal court given the broad language of the Johnson Act. *See Patch IV*, 167 F.3d at 24–25. Nor has the company yet been able to explain plausibly, at least to us, how the disallowance order conflicts with a federal statute or FERC order—claims admittedly likely to avoid the Johnson Act's bar. *See Patch V*, 167 F.3d at 33–34.

On this record, we are no more able to sustain the injunction against the Commission's new refund order than we were to sustain the earlier injunction against the underlying disallowance that we vacated in *Patch V*. But the district court may be on the verge of supplying the missing explanation in deciding the merits of the now-submitted cross-motions for summary judgment. Based on its orders respecting the disallowance and the refund, the district court seemingly believes that both measures are vulnerable to a federal injunction, despite the Johnson Act, and it may be on the verge of making clear why.

It is thus possible that in the near future the district court will grant permanent injunctive relief requiring the Commission to allow cost pass-throughs of Central Vermont cost increases; and if so it would be very odd to have refunds, inconsistent with such an injunction, made effective in the next several months. For this reason, we have determined not to vacate the district court's injunction against the refund order ourselves but instead to remand this aspect of the case to the district court for further proceedings consistent with this opinion. *Cf. SEC v. Lehman Bros., Inc.*, 157 F.3d 2, 9 (1st Cir.1998).

On remand, the district court may defer vacation of this injunction against the refund order for up to 90 days. If within that period it has decided the merits of the

request for a permanent injunction in a way inconsistent with refunds, or has taken any other action that provides a showing that the company is likely to prevail on the merits in federal court in barring the refunds, it may enter a superceding injunction against the refund order, which the Commission may then appeal to us. Otherwise, no later than the end of the 90–day period, the district court must vacate its present injunction insofar as it enjoins the Commission's refund order.

The district court's refusal to modify the injunction insofar as it prohibits implementation of the restructuring plan is *affirmed;* insofar as the district court has enjoined the Commission's refund order, the matter is *remanded* for further proceedings consistent with this opinion.

*It is so ordered.*